UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-21926-BLOOM/Otazo-Reyes

CLEAR SPRING PROPERTY
AND CASUALTY COMPANY,

    Plaintiff,

v.

BIG TOYS LLC,

    Defendant.
_____/

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff Clear Spring Property and Casualty Company's ("Clear Spring") Motion for Summary Judgment, ECF No. [27] ("Clear Spring's Motion"), filed on April 14, 2023. Defendant Big Toys LLC ("Big Toys") filed a Response in Opposition together with a Cross-Motion for Summary Judgment, ECF No. [36] ("Big Toys' Motion"). Clear Spring filed a Reply in support of its Motion, ECF No. [43], and Big Toys filed a Reply in support of its Motion, ECF No. [47]. Clear Spring then filed a Sur-Reply, ECF No. [51], with the Court's leave. ECF No. [51]. Finally, Big Toys filed a Notice of Supplemental Authority, ECF No. [52]. The Court has considered the parties' submissions, the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, Clear Spring's Motion is granted, and Big Toys' Motion is denied.

    **I.**    **BACKGROUND**

On March 19, 2022, Big Toys' vessel was involved in a collision in Biscayne Bay, Miami, Florida. ECF No. [6] ¶ 9. The vessel was insured by Defendant Clear Spring, which initiated this action seeking a declaration that it has no duty to pay for the vessel's damages. *See generally id*.

Clear Spring alleges that the insurance policy is void because Big Toys breached the insurance policy's "Fire Suppression Warranty" (Count I), Big Toys breached the duty of *uberrimae fidei* (Count II), and Big Toys failed to disclose that its named operators had violations or suspensions in the past five years (Count III). *Id*. Big Toys thereafter filed its Counterclaims for breach of contract. ECF No. [15] at 10.

Clear Spring's Motion for Summary Judgment is limited to Count I, breach of the insurance policy's "Fire Suppression Warranty." ECF No. [27]. Clear Spring argues that, under New York law, which governs pursuant to a Choice of Law provision within the insurance policy, Big Toys' breach of the Fire Suppression Warranty renders the insurance policy void. *See generally id*.

Big Toys responds that Florida law governs this dispute and Florida's "anti-technical" statute, Fla. Stat. § 627.409(2), prohibits Clear Spring from denying coverage based on Big Toys' alleged breach of the Fire Suppression Warranty. ECF No. [36]. Big Toys argues in the alternative that, (a) even if New York law applies, Clear Spring has not established that Big Toys breached the Fire Suppression Warranty, (b) Clear Spring has admitted that Big Toys complied with all conditions and warranties under the policy, and (c) Clear Spring waived its right to rescind the Policy because it failed to return the Policy premiums. *Id.* Big Toys concludes that it is entitled to summary judgment awarding it all benefits under the Policy. *Id*. at 20.

II.     **MATERIAL FACTS**

Based on the parties' statements of material facts,[1] along with the evidence in the record, the following facts are not in dispute:

---

[1] Clear Spring supported its Motion with a Statement of Material Facts, ECF No. [26] ("SMF"). Big Toys filed a Counter Statement of Material Facts, ECF No. [35] ("CSMF"). Clear Spring filed a Reply Statement of Material Facts, ECF No. [42] ("RSMF").

On March 19, 2022, there was a maritime collision in Biscayne Bay, Miami, involving Big Toys' 2019 45' Azimut (the "Vessel"). SMF ¶ 1; CSMF at 1 ¶ 1.[2] The Vessel was insured by Clear Spring pursuant to an insurance policy (the "Policy") with effective dates from May 28, 2021 through May 28, 2022. SMF ¶ 2; CSMF at 1 ¶ 2. The Policy insured the Vessel's hull for $860,000.00. SMF ¶ 2; CSMF at 1 ¶ 2.

The Policy contains the following warranty, which the parties call the "Fire Suppression Warranty":

> If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

ECF No. [6-1] at 13. The Policy further provides that a breach of a warranty "will void this policy from its inception." *Id*. at 14. The Vessel was fitted with fire suppression equipment. SMF ¶ 9; CSMF at 1 ¶ 9. The parties agree that there is no causal relation between the fire suppression equipment and the damages sustained by the Vessel. ECF No. [43] at 2 n.2.

The Policy contains the following Choice of Law provision:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

ECF No. [6-1] at 15.

---

[2] Clear Spring correctly points out that Big Toys' CSMF does not comply with Local Rule 56.1(b)(2)(D) because it restarts the numbering of paragraphs after responding to the paragraphs within the SMF. ECF No. [42] at 1 n.1. The result is that the CSMF contains two paragraphs numbered "1," two paragraphs numbered "2," and so on. To avoid confusion, the Court cites to the page number and paragraph number when referring to the CSMF.

Following the collision, Big Toys submitted a timely claim for damages to Clear Spring. CSMF at 4 ¶ 2; RSMF ¶ 2. Clear Spring refused to pay for those damages. CSMF at 4 ¶ 3; RSMF ¶ 3. Clear Spring has not returned any of the premiums paid by Big Toys. CSMF ¶ 4; RSMF ¶ 4.

On June 22, 2022, Clear Spring filed suit, seeking a declaration that the Policy is void because of Big Toys' breaches of the Policy, including its alleged breach of the Fire Suppression Warranty. *See generally* ECF No. [1].

### III.    LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations[.]'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019); *see also Crocker v. Beatty*, 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-moving party's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one

4

inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

IV.    **DISCUSSION**

The primary issue raised by the Motions is whether a breach of the Fire Suppression Warranty renders the Policy void. As the Court explains below, that issue turns on whether Florida or New York law governs. The Court concludes that the Policy has a valid Choice of Law provision designating New York law as the "gap-filler" for this maritime dispute. Under New York law, a breach of the Fire Suppression Warranty renders the Policy void.

The Court also addresses Big Toys' additional arguments as to why summary judgment should not be granted to Clear Spring, because (B) the Fire Suppression Warranty is ambiguous, (C) Clear Spring has failed to show that Big Toys breached that warranty, (D) Clear Spring inadvertently admitted that Big Toys complied with the warranty, and (E) Clear Spring improperly initiated this action prior to refunding the policy premiums that Big Toys paid. The Court finds Big Toys' arguments to be without merit and concludes that summary judgment is appropriate.

A.  **Choice of Law**

The first issue is what law governs the effect of Big Toys' alleged breach of the Fire Suppression Warranty. As a dispute arising under a maritime insurance contract, this case "fall[s] within the admiralty jurisdiction of the federal courts," so it is "governed by maritime law." *GEICO Marine Ins. Co. v. Shackleford*, 945 F.3d 1135, 1139 (11th Cir. 2019). However, when no "judicially established federal admiralty rule" resolves the issue at hand, federal courts "rely on state law when addressing questions of maritime insurance." *Id.* (quoting *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955)). The parties agree that no judicially

5

established federal admiralty law governs the effect of Big Toys' alleged breach of the Fire Suppression Warranty. *See Clear Spring Prop. & Cas. Co. v. Viking Power LLC*, 608 F. Supp. 3d 1220, 1226 (S.D. Fla. 2022) ("[T]here is no firmly established federal maritime precedent governing express fire-suppression . . . warranties."). Thus, the Court must look to state law to fill in the gap of federal maritime law. *Shackleford*, 945 F.3d at 1139.

Big Toys argues that "Florida's relationship to this action overwhelmingly favors the application of Florida law." ECF No. [36] at 6. "The subject Policy was issued and delivered in Florida, *via* a Florida agent/broker, to a Florida insured," and "[t]he Incident, as well as all acts and/or omissions giving rise to this claim, occurred in Florida." *Id*. Clear Spring concedes that, under Florida law, its breach of warranty claim would fail, because Florida's "anti-technical statute," Fla. Stat. § 627.409(2), precludes an insurer from rescinding its policy due to a technical breach that is unrelated to the loss. ECF No. [43] at 2 n.2; *see also Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1170 (11th Cir. 2021). The parties agree that Big Toys' alleged breach of the Fire Suppression Warranty has no relation to the damages sustained by the Vessel, so the anti-technical statute would prevent Clear Spring from avoiding its payment obligation due to a breach of that Warranty. ECF No. [43] at 2 n.2 (Clear Spring conceding that its claim of breach of warranty fails under Florida law).

Clear Spring asserts that New York law applies pursuant to the unequivocal terms of the Policy's Choice of Law Provision:

> It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the State of New York.

ECF No. [6-1] at 15. New York law requires that express warranties "be literally complied with,

6

and . . . noncompliance forbids recovery, regardless of whether the omission had a causal relation to the loss." *Great Lakes Reinsurance (UK), PLC v. Rosin*, 757 F. Supp. 2d 1244, 1257 (S.D. Fla. 2010) (quoting *Jarvis Towing & Transp. Corp. v. Aetna Ins. Co.*, 82 N.E.2d 577, 577 (N.Y. 1948)). Accordingly, if New York law governs, a breach of the Fire Suppression Warranty would render the Policy void. *See, e.g.*, *Viking Power*, 608 F. Supp. 3d at 1228.

"As this case lies in admiralty, federal maritime conflict of laws control." *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1161 (11th Cir. 2009). Absent a reason not to, federal courts sitting in admiralty generally enforce "the parties' choice-of-law agreement." *Great Lakes Ins. SE v. Wave Cruiser LLC*, 36 F. 4th 1346, 1354 (11th Cir. 2022). The Eleventh Circuit has not specifically addressed the circumstances in which a court sitting in admiralty should reject the parties' choice-of-law provision, but it has looked to the Fifth Circuit's analysis as to whether enforcing the provision "would be unreasonable or unjust." *Id*. at 1354 (quoting *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc*., 585 F.3d 236, 244 (5th Cir. 2009)). District Courts in the Southern District of Florida also consider whether the choice-of-law provision's chosen state "has no substantial relationship to the parties or the transaction[.]" *Rosin*, 757 F. Supp. 2d at 1251 (quoting *Stoot v. Fluor Drilling Services, Inc*., 851 F.2d 1514, 1517 (5th Cir. 1988)). Big Toys argues that the Policy's Choice of Law provision is unenforceable because (i) its enforcement would be unreasonable or unjust, and (ii) there are no substantial ties to New York in this case.

   i. **Unreasonable or Unjust**

The Eleventh Circuit has not clearly spoken on this issue. Clear Spring cites *Wave Cruiser*, 36 F.4th at 1354, for the proposition that "there is nothing 'unreasonable or unjust' about selecting New York as a secondary source of law." ECF No. [27] at 5. In *Wave Cruiser*, the Eleventh Circuit

7

honored a maritime insurance policy's choice-of-law provision designating New York law to fill a gap in federal admiralty law. *Wave Cruiser*, 36 F.4th at 1356. However, neither party argued that enforcing that choice-of-law provision would be "unreasonable or unjust." 36 F.4th at 1354. Therefore, as the Eleventh Circuit pointed out: "We have no occasion today to decide whether we would refuse to enforce a choice-of-law clause in a maritime contract if its enforcement would be unreasonable or unjust because neither party argues that here." *Id*. Thus, *Wave Cruiser* has minimal relevance as to whether the Court may consider Florida's public policy when evaluating whether the Choice of Law provision is "unreasonable or unjust." Accordingly, the Court looks to persuasive authority from other Circuits and prior decisions from this District.

### (1) *Great Lakes Ins. v. Raiders Retreat Realty Co.*, 47 F.4th 225 (3d Cir. 2022)

Big Toys relies on the Third Circuit's decision in *Great Lakes Ins. v. Raiders Retreat Realty Co.*, 47 F.4th 225 (3d Cir. 2022). *Raiders* involved circumstances nearly identical to those here. A marine insurer sought declaratory judgment that it had no duty to pay for an insured vessel's damages because the vessel's fire-extinguishing equipment had not "been timely recertified or inspected notwithstanding that the vessel's damage was not caused by fire." *Id.* at 227. The insurance policy had a choice-of-law provision designating New York law to fill gaps in federal admiralty law. *Id.* The insured argued that the choice-of-law provision was unreasonable because it contravened Pennsylvania's "strong public policy" which "protects insureds in Pennsylvania from . . . bad faith and unfair trade practices by insurance companies." *Id.* at 230. The district court rejected the insured's argument, concluding that "the public policy of a state where a case was filed cannot override the presumptive validity, under federal maritime choice-of-law principles, of a provision in a marine insurance contract[.]" *Id*. The Third Circuit disagreed and remanded for the District Court to consider whether "Pennsylvania has a strong public policy that would be

8

thwarted by applying New York law." *Id*. at 233.

Big Toys argues that this Court must do as the Third Circuit ordered, that is, consider whether the public policy of the state—in this case, Florida—"would be thwarted by applying New York law." *Id.* Big Toys asserts that application of New York law "would eviscerate the protection afforded by Florida's anti-technical statute and otherwise contravene Florida's strong public policy in favor of protecting Florida insureds from the type of unfair business practice that Clear Spring demonstrates in this action[.]" ECF No. [36] at 5-6.

Clear Spring responds that Big Toys' reliance on *Raiders* is misplaced because (a) that decision is not binding on this court, (b) it was wrongly decided and will likely be reversed by the Supreme Court, which has granted *certiorari*,[3] (c) the *Raiders* court's approach has been rejected by substantial precedent, and (d) even if *Raiders* was correctly decided, there is no strong public policy implicated here. ECF No. [43] at 4.

Given the centrality of the *Raiders* decision to this dispute, an extended discussion of that case is in order. The *Raiders* court began its analysis with the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), wherein the Court addressed the related issue of a choice-of-forum clause's enforceability. The *Bremen* Court concluded that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id*. (citation omitted). While *Bremen* delt with a choice-of-forum issue between two *countries*, the Supreme Court subsequently applied *Bremen*'s analysis to a forum dispute between two *states*. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 592-97 (1991)

---

[3] *See Great Lakes Ins. SE v. Raiders Retreat Realty Co.*, 143 S. Ct. 999 (2023) (mem.) (granting *certiorari* on the following question: "Under federal admiralty law, can a choice of law clause in a maritime contract be rendered unenforceable if enforcement is contrary to the 'strong public policy' of the state whose law is displaced?").

9

(concluding that the choice-of-forum clause was valid). Finally, in *Milanovich v. Costa Crociere, S.p.A.*, 954 F.2d 763, 767 n.7 (D.C. Cir. 1992), the D.C. Circuit extended the *Bremen* Court's framework to evaluate the reasonableness of a choice-of-law provision within a cruise ticket. The *Raiders* court relied on *Bremen*, *Carnival*, and *Milanovich* for the proposition that a district court "need[s] to consider whether Pennsylvania has a strong public policy that would be thwarted by applying New York law." *Raiders*, 47 F.4th at 233.

The Court agrees with Clear Spring that the *Raiders* court departed from precedent by considering "the public policy of the forum state rather than the United States as a whole." ECF No. [43] at 4. *Bremen* itself did not address any *state* policy, since the issue in that case was international, not interstate. 407 U.S. at 15. In *Carnival*, when evaluating whether a choice-of-forum clause designating Florida should be honored, the Court did not consider whether the choice-of-forum clause violated the public policy of a state. 499 U.S. at 593-97. Instead, the *Carnival* Court considered whether the choice-of-forum clause was inconsistent with *federal* law. *Id.* at 595-597. Finally, in *Milanovich*, the D.C. Circuit had no occasion to examine state policy because the choice-of-law dispute was whether American or Italian law governed. 954 F.2d at 765. Thus, the *Milanovich* court examined whether the choice-of-law provision contravened a public policy of *federal* law. *Id.* at 768-69. In sum, the three primary cases relied upon by the *Raiders* court do not support the conclusion that a court sitting in admiralty must consider whether a choice-of-law clause is unreasonable because the designated forum "thwart[s]" the public policy of the State in which the parties sit. *Raiders*, 47 F.4th at 233.

Clear Spring is also correct that two Courts of Appeals and the "majority of district courts in major maritime districts consider only whether the pre-selected law is contrary to federal public policy, not the public policy of the forum state." ECF No. [43] at 5 n.3 (citing cases). In *Stoot v.*

*Fluor Drilling Services*, 851 F.2d 1514 (5th Cir. 1988), the Fifth Circuit held that "under admiralty law, where the parties have included a choice of law clause, that state's law will govern unless the state has no substantial relationship to the parties or the transaction or the state's law *conflicts with the fundamental purposes of maritime law*." *Id.* at 1517 (emphasis added; citation omitted). Later, in 2009, the Fifth Circuit entertained the possibility that a contradictory state law could render a choice-of-law provision unfair. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 244 (5th Cir. 2009) ("Assuming, arguendo, that this would be determinative, it has not been shown."). Most recently, however, the Fifth Circuit reiterated the test stated in *Stoot* and clarified that the relevant forum is federal admiralty law, not state law. *St. Paul Fire & Marine Ins. Co. v. Bd. of Com'rs of Port of New Orleans*, 418 Fed. Appx. 305, 309 (5th Cir. 2011) (citing *Stoot*, 851 F.2d at 1517). The Ninth Circuit has likewise held that the relevant "public policy of the forum" is "federal public policy as supplied by federal maritime law[.]" *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1060 (9th Cir. 2018).

The Southern District of Florida has consistently followed the Fifth Circuit's approach as stated in *Stoot*. *See, e.g.*, *Rosin*, 757 F. Supp. 2d at 1251; *Great Lakes Ins. SE v. Lassiter*, 21-cv-21452-CMA, 2022 WL 1288741, at *6 (S.D. Fla. Apr. 29, 2022) ("Under the general rule, a choice-of-law provision controls unless the state in question 'has no substantial relationship to the parties or the transaction or the state's law conflicts with the fundamental purpose of maritime law.'" (quoting *Stoot*, 851 F.2d at 1517)); *Polar Vortex, LLC v. Certain Underwriters at Lloyd's, London*, No. 22-CV-61067-RAR, 2023 WL 2016832, at *4 (S.D. Fla. Feb. 14, 2023) (same). In *Lassiter*, a maritime insurance case involving a choice-of-law issue, Chief Judge Altonaga considered and rejected the argument that a court must "evaluate whether New York law conflicts with a fundamental policy of Florida," and instead concluded that the relevant public policy to

11

consider "is maritime jurisdiction, not Florida." 2022 WL 1288741 at *8.

The Court concludes that *Raiders* does not provide a convincing basis for the Court to depart from the course this District has consistently followed. The Court agrees with the *Lassiter* court that the proper inquiry is whether the Policy's Choice of Law provision conflicts with federal admiralty law, not whether it conflicts with the law of the state wherein the admiralty court happens to sit. *Lassiter*, 2022 WL 1288741 at *7. As the Eleventh Circuit has explained, public policy favors the uniformity of maritime law. *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 996 F.3d 1161, 1167 (11th Cir. 2021); *see also Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 28 (2004) ("[O]ur touchstone is a concern for the uniform meaning of maritime contracts[.]"). If courts are required to analyze whether a choice-of-law gap-filler provision contravenes the public policy of the state in which the admiralty court sits, then contracts with identical choice-of-law provisions will be interpreted inconsistently depending on where suit is filed. Such a result is disfavored because it would further "undermine the uniformity of general maritime law." *Norfolk*, 543 U.S. at 28. Thus, the Court concludes that the relevant "forum" is general maritime law. Big Toys has provided no argument as to why applying New York law is this case would contravene the public policy of federal admiralty law.

### ii. Substantial Relationship

Big Toys additionally argues that "Clear Spring has only minimal ties to New York," and "Florida's relationship to this action overwhelmingly favors the application of Florida law." ECF No. [36] at 6. Big Toys asserts that the Policy was issued in Florida to a Florida insured, and the accident, as well as all acts and omissions giving rise to this claim, occurred in Florida. ECF No. [36] at 6. Big Toys therefore concludes that "[a]ll factors weigh in favor of applying Florida law, rather than New York law." *Id*.

Clear Spring accurately responds that this District has consistently held that "the issue is not whether the state has a *greater* relationship to the parties or transaction than another state, but whether the state has a *substantial* relationship to the parties or transaction." *Lassiter*, 2022 WL 1288741, at *7 (emphasis in the original); *see also Rosin*, 757 F. Supp. 2d at 1251 (finding that "New York has a sufficient substantial relationship with [the insurer] to allow application of New York law[.]"); *Polar Vortex*, 2023 WL 2016832 at *4 (applying New York law despite the facts that the contract was entered into in the U.S. Virgin Islands and that is where the vessel was located).

Big Toys has cited only one maritime case that rejected a maritime contract's choice-of-law provision for lack of a "substantial relationship to the parties or the transaction[.]" *Badeaux v. Eymard Bros. Towing Co.*, 568 F. Supp. 3d 645, 652–53 (E.D. La. 2021) (quotation marks omitted). The *Badeaux* court rejected the choice-of-law provision designating New York as governing law because it found "not a single connection between New York and these parties or this incident." *Id*. at 653. Here, by contrast, Clear Spring asserts that it is an admitted carrier in New York, it is subject to service of process in New York, and "New York is a major maritime jurisdiction with a well-developed body of maritime law and insurance law." ECF No. [27] at 5. Consistent with prior decisions from this District, *see, e.g.*, *Polar Vortex*, 2023 WL 2016832 at *4, the Court concludes that Clear Spring's ties to New York constitute a "sufficient substantial relationship . . . to allow application of New York law[.]" *Rosin*, 757 F. Supp. 2d at 1251.

Big Toys argues, for the first time in its Reply, that "Big Toys was not afforded any opportunity to contemplate the inconvenience of the imposition of New York law." ECF No. [47] at 2. In support of this argument, Big Toys has submitted a Declaration from Big Toys' owner, Mauricio Levi, wherein Mr. Levi declares that he was never "made aware that the Policy contained

13

(or would contain) a New York choice-of-law provision." ECF No. [47-1] ¶ 4. To the extent that this argument is properly before the Court, it is meritless. As Clear Spring correctly points out, under both New York and Florida law, a party is presumed to know and understand the terms of the contract it entered into. *See God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Assocs., LLP*, 845 N.E.2d 1265, 1267 (N.Y. 2006) (a party "may not pick and choose which provisions suit its purposes, disclaiming part of a contract while alleging breach of the rest"); *Webster v. Royal Caribbean Cruise, Ltd.*, 124 F. Supp. 2d 1317, 1324 (S.D. Fla. 2000) (a party "cannot be permitted to pick and choose the provisions of the [agreement] he wishes to enforce and those he wishes to ignore when bringing a lawsuit for damages under the [agreement]."). Thus, Big Toys' owner's purported ignorance or "lack of bargaining ability" does not invalidate a "choice-of-law clause in a marine insurance policy." *Rosin*, 757 F. Supp. 2d at 1252.

The Court concludes that the Policy has a valid and enforceable Choice of Law clause providing that New York law governs in the absence of "well established entrenched precedent." ECF No. [6-1] at 15. The parties agree that "there is no firmly established federal maritime precedent governing express fire-suppression . . . warranties." *Viking Power*, 608 F. Supp. 3d at 1226. They further agree that, under New York law, breach of the Fire Suppression Warranty renders the Policy void. *See id.* at 1228. The Court next considers the validity of the Fire Suppression Warranty in this case.

### B.  The Fire Suppression Warranty Is Not Ambiguous

In the event that New York law applies—as the Court has concluded—Big Toys argues that summary judgment should not be granted to Clear Spring because the Fire Suppression Warranty is ambiguous. ECF No. [36] at 11. The Fire Suppression Warranty states in full:

> If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good

14

working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

ECF No. [6-1] at 13. Big Toys seizes onto the last two words of the Warranty—"as necessary"—to argue that Big Toys reasonably interpreted the Warranty to require that the tanks be weighed "as necessary," as opposed to "once a year." ECF No. [36] at 10-11.

Several courts, including the Southern District of Florida, have rejected Big Toys' argument. *See* ECF No. [43] at 8-10. In *Viking Power*, 608 F. Supp. 3d at 1227, this District Court evaluated a Fire Suppression Warranty that is identical to the one in this case.[4] Citing with approval a First Circuit opinion evaluating an identical fire suppression warranty, the *Viking* court concluded that "nothing about the fire-suppression warranty is ambiguous." *Id*. at 1227 (citing *Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19, 22-23 (1st Cir. 2008)). The final clause of the warranty requires that "certification/tagging and recharging" occur "as necessary," and the penultimate clause requires weighing of the tanks "once a year." *Id*. Big Toys' alternative interpretation of the warranty omits entirely the term "once a year" which immediately follows "weighing of tanks." ECF No. [36] at 10. The only reasonable interpretation of the Fire Suppression Warranty is that it required the tanks be weighed "once a year." ECF No. [6-1] at 13.

The Court agrees with *Viking Power* and *Pagan-Sanchez* that the Fire Suppression Warranty clearly and unambiguously requires that fire suppression tanks be weighed at least once a year. ECF No. [6-1] at 13.

### C. Big Toys Breached the Fire Suppression Warranty

---

[4] The *Viking Power* court did not provide the exact language of the Fire Suppression Warranty at issue in that case but stated that it was identical to the warranty discussed by the First Circuit in *Lloyd's of London v. Pagan-Sanchez*, 539 F.3d 19 (1st Cir. 2008). A review of the *Pagan-Sanchez* decision reveals that the Fire Suppression Warranty in that case is identical to the provision here, except that the term "Scheduled Vessel" is not capitalized in the warranty discussed by *Pagan-Sanchez*. *Id*. at 22.

15

Big Toys argues that, even if the Fire Suppression Warranty requires annual weighing of the fire suppression tanks, Clear Spring's Motion should still be denied because Clear Spring has failed to conclusively establish that the Warranty was breached. ECF No. [36] at 14. Clear Spring responds that the uncontested evidence reveals that the tanks had not been weighed within twelve months immediately preceding the Vessel's accident. ECF No. [43] at 10-11.

Big Toys' argument is belied by its own admission. In Big Toys' Amended Responses to Clear Spring's First Request for Admissions, Big Toys "[a]dmitted that Big Toys did not weigh or request the weighing of the fixed fire suppression bottle in the twelve months immediately preceding the Incident." ECF No. [26-3] at 3. Big Toys' admission is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). Big Toys has not moved to withdraw its admission, nor does Big Toys offer a response to Clear Spring's argument that Big Toys is bound by its admission. *See* Big Toys' Reply, ECF No. [47] at 8-9.

Big Toys attempts to create a factual issue through deposition testimony of the Vessel's owner, Mauricio Levi, who testified that he employed men to maintain the Vessel and he did not know if they "did anything with the fire extinguishers[.]" Levi Dep. at 71:15-18, ECF No. [26-5] at 19. Big Toys seizes on Levi's uncertainty to argue that "[i]t is uncertain whether [the maintenance men] weighed the Vessel's fixed fire suppression bottle in the twelve months immediately preceding the Incident." ECF No. [36] at 14.

Even if the Court were inclined to disregard Big Toys' admission—which it is not—Big Toys has failed to raise a genuine issue of material fact as to whether the fire suppression equipment had been weighed within twelve months of the Incident. In support of its Motion, Clear Spring produced credible evidence that the fire suppression equipment had *not* been weighed,

certified, tagged, or recharged since June 2020. *See* ECF No. [26-4] (photograph of fire suppression equipment showing June 2020 as the most recent date of maintenance); ECF No. [26-6] (report of Adam Goodman concluding that the fire-suppression equipment was last serviced in June 2020). To create a genuine dispute of material fact, it was incumbent upon Big Toys to "produc[e] in turn evidence that would support" its position. *Anderson*, 477 U.S. at 256. As Clear Spring rightly points out, Levi's uncertainty is not evidence that the equipment was weighed, but rather "speculation" that "does not create a *genuine* issue of fact[.]" *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (quotation marks omitted; emphasis in the original).

Accordingly, there exists no genuine issue of fact as to whether the fire suppression equipment had been weighed within twelve months preceding the incident, as the Fire Suppression Warranty requires. Big Toys' failure to weigh the equipment constitutes a breach of the Fire Suppression Warranty.

### D. Clear Spring's Purported Admission

Next, Big Toys argues that Clear Spring admitted that Big Toys complied with all conditions and warranties under the Policy. ECF No. [36] at 15. In response to Big Toys' counterclaim for breach of contract, Clear Spring admitted that "[a]ll conditions precedent to bringing this action have been performed, have occurred, or have otherwise been waived." ECF No. [16] at 2 ¶ 21; ECF No. [15] ¶ 21. The Policy sets forth a precondition to filing suit that Big Toys comply "with the provisions, conditions and warranties of this insuring agreement." ECF No. [6-1] at 4. Thus, Big Toys reasons, in conceding that "[a]ll conditions precedent . . . have been performed, have occurred, or have otherwise been waived," Clear Spring "concedes that Big Toys satisfied the conditions and warranties under the Policy." ECF No. [36] at 15.

17

In response, Clear Spring correctly points out that Big Toys' argument ignores the final words of Clear Spring's admission. ECF No. [43] at 13. Clear Spring did not admit that all conditions precedent had been satisfied, as Big Toys asserts, but rather that the conditions "have been performed, have occurred, *or have otherwise been waived*." ECF No. [15] ¶ 21 (emphasis added). Thus, Clear Spring persuasively asserts that it did not admit that Big Toys had complied with all warranties under the policy, but rather waived any noncompliance for purposes of filing suit. ECF No. [43] at 13. Tellingly, in its Reply, Big Toys offers no rebuttal to Clear Spring's refutation of Big Toys' argument. *See generally* ECF No. [47].

The Court concludes that Clear Spring did not inadvertently admit that Big Toys complied with the Fire Suppression Warranty.

### E.  Policy Premiums

The final issue is whether Clear Spring waived its right to rescind the Policy or deem it void because Clear Spring did not return the Policy premiums that Big Toys had paid. ECF No. [36] at 18-19. According to Big Toys, "[b]y failing to return the premiums paid by Big Toys, Clear Spring has waived its right to rescission." ECF No. [36] at 18 (citing *Laboss Transp. Services, Inc. v. Glob. Liberty Ins. Co. of N.Y.*, 208 F. Supp. 3d 1268, 1279 (S.D. Fla. 2016) for the proposition that "an insurer can forfeit its right of rescission.").

Clear Spring responds that it is not required to return the premiums until a court has granted declaratory judgment in its favor declaring the Policy void. ECF No. [43] at 13-14 (citing, *inter alia*, *Great Lakes Reinsurance PLC v. Barrios*, No. 08-20281-CIV, 2008 WL 6032919, at *6 (S.D. Fla. Dec. 10, 2008); *Am. Home Assur. Co. v. Masters' Ships Mgmt. S.A.*, 423 F. Supp. 2d 193, 228-29 (S.D.N.Y. 2006) (ordering the return of premiums upon the granting of summary judgment in the insurer's favor)). Again, Big Toys has neglected to rebut Clear Spring's response in its Reply.

Case No. 22-cv-21926-BLOOM/Otazo-Reyes

*See generally* ECF No. [47].

Big Toys is correct that an insurer can forfeit its right of rescission by taking actions inconsistent with rescission. *Laboss*, 208 F. Supp. 3d at 1279. One such inconsistent action is when an insurer accepts and collects premiums despite knowing that the policy has been forfeited. *See id*. Here, however, Clear Spring did not know of Big Toys' breach of the Fire Suppression Warranty until it conducted its post-accident investigation. In light of the parties' disagreement as to whether the Policy is void, Clear Spring acted appropriately in filing this lawsuit for declaratory judgment prior to returning the premiums. *See Barrios*, 2008 WL 6032919, at *6; *Am. Home Assur. Co.*, 423 F. Supp. 2d at 229. Thus, the Court rejects Big Toys' argument that Clear Spring forfeited its right of rescission by failing to return Big Toys' premiums prior to filing suit.

## IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Big Toys' Motion for Summary Judgment, **ECF No. [36]**, is **DENIED**.

2. Clear Spring's Motion for Summary Judgment, **ECF No. [27]**, is **GRANTED**.

3. Summary Judgment is granted as to Count I of Clear Spring's Amended Complaint, ECF No. [6], because the undisputed evidence reveals that Big Toys breached the Policy's Fire Suppression Warranty.

4. The Court **DECLARES** that the insurance policy between the parties is void *ab initio* and affords no coverage for damages sustained to Big Toys' Vessel.

5. Clear Spring shall **REFUND** any premiums paid by Big Toys to insure the Vessel.

6. Big Toys' Counterclaim, **ECF No. [15]** at 10-11, is **DISMISSED**.

7. To the extent not otherwise disposed of, all pending motions are **DENIED AS**

Case No. 22-cv-21926-BLOOM/Otazo-Reyes

**MOOT** and all deadlines are **TERMINATED**.

8. The Clerk of Court is directed to **CLOSE** this case.

9. The Court retains jurisdiction to resolve any post-judgment motions.

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 19, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record